FILED
APR 21 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, ) <br> AFL-CIO ) <br>    1300 L Street, NW ) <br>    Washington, DC 20005, ) <br> ) <br>    Plaintiff, ) <br> ) <br>          v. ) <br> ) <br> UNITED STATES POSTAL SERVICE, ) <br>    475 L'Enfant Plaza, SW ) <br>    Washington, DC 20260 ) <br> ) <br>    Defendant ) <br> _____) | Civil Action No. <br><br> **Preliminary Injunction Sought** <br><br> CASE NUMBER 1:06CV00726 <br> JUDGE: Colleen Kollar-Kotelly <br> DECK TYPE: General Civil <br> DATE STAMP: 04/21/2006 |

**COMPLAINT**

INTRODUCTION

1. This is an action by the American Postal Workers Union, AFL-CIO (hereinafter "the APWU") for a declaratory judgment finding that the United States Postal Service (hereinafter "Postal Service") has violated Section 3661 of the Postal Reorganization Act, and preliminary and permanent injunctions prohibiting the United States Postal Service from implementing its Evolutionary Network Development (hereinafter "END") program in violation of Section 3661 of the Postal Reorganization Act.

2. Section 3661 of the Postal Reorganization Act (hereinafter "the Act") requires that "[w]hen the Postal Service determines that there should be a change in the nature of postal services which generally affect service on a nationwide or substantially nationwide basis, it shall submit a proposal, within a reasonable time prior to the effective date of

1

such proposal, to the Postal Rate Commission requesting an advisory opinion on the change."

3. Section 3661 of the Act also mandates that the Postal Rate Commission (hereinafter "the Commission") provide users of the mail an opportunity for hearing on the record in conformance with the Sections 556 and 557 of the Administrative Procedure Act before issuing an advisory opinion.

4. The Postal Service has developed a program to change its mail sorting, processing and transportation operations that will impact postal services on a nationwide or substantially nationwide basis and has begun implementation of this program without submitting it to the Commission a reasonable time prior to the program's effective date and without receiving an advisory opinion from the Commission in violation of the Postal Reorganization Act.

5. Plaintiff, as a mailer, will be irreparably injured if the Postal Service is not prevented from violating the Section 3661 of the Postal Reorganization Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 39 U.S.C. § 409(a); and under 28 U.S.C. §§ 1331 and 1339; and 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (e) because the Defendant has its principal place of business in Washington, D.C.

## PARTIES

8. Plaintiff American Postal Workers Union, AFL-CIO (hereinafter "the APWU"), is an unincorporated labor organization with its principal offices at 1300 L Street, N.W., Washington, D.C. 20005 that represents approximately 300,000 postal employees for purposes of collective bargaining. Plaintiff APWU is a large mailer. The APWU and its locals mail more than 3 million pieces of mail each year. Plaintiff APWU maintains offices and conducts business throughout the United States and has Local affiliates in every state and territory of the United States. Plaintiff APWU sends mail in and receives mail from every U.S. state and territory.

9. Defendant United States Postal Service (hereinafter "the Postal Service") is, pursuant to 39 U.S.C. § 201 "an independent establishment of the executive branch of the Government of the United States... ." The headquarters of the Postal Service is at 475 L'Enfant Plaza, SW, Washington, D.C. 20260.

## STATEMENT OF FACTS

10. In November 2001 or before, the Postal Service began development of a Network Integration and Alignment (hereinafter "NIA") plan to be used to analyze and redesign the existing postal facility network as part of the Postal Service Transformation Plan.

11. The Postal Service agreed to provide a copy of its NIA plan to the APWU no later than 2002.

12. The Postal Service's NIA plan was sufficiently developed to be used, at least in part, by December 2002.

13. Since December of 2002 the Postal Service has used its NIA plan to evaluate proposals to consolidate postal facilities; and proposals selected by NIA have resulted in the closure of approximately 30 Postal Service processing facilities, and in the reallocation of work processed in other facilities.

14. The Postal Service has not revealed its overall network realignment strategy, opting instead to reveal it slowly over time.

15. The NIA plan has been re-named the Evolutionary Network Development (hereinafter "END") process. The NIA and END processes use the same methods, data, models and objectives for designing the Postal Service's mail processing network.

16. Under Section 3661(b) of the Postal Reorganization Act (hereinafter "the Act"), before implementing a "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis" the Postal Service must seek an advisory opinion regarding this change from the Postal Rate Commission (hereinafter "the Commission" or "the PRC").

17. Under Section 3661(b) of the Act, the Postal Service must submit its proposal to the Commission for an advisory opinion "within a reasonable time prior to the effective date of such proposal."

18. Previous Section 3661 proceedings before the Postal Rate Commission on other changes in the nature of postal services have taken approximately 8-12 months to complete.

19. Eight months to one year is a reasonable period of time for completion of a Section 3661 proceeding concerning END.

20. On February 14, 2006 the Postal Service submitted a portion of the END plan to the

Postal Rate Commission pursuant to Section 3661 of the Postal Reorganization Act. This submission is the subject of Case No. N 2006-1 pending before the Commission.

21. The Postal Service's submission to the Commission stated that it intended to implement END on or about May 15, 2006.

22. In its N 2006-1 submission, the Postal Service sought expedited consideration of END, proposing a truncated procedural schedule that would have required the Commission to complete consideration of the END plan and provide its advice by May 5, 2006, in time for a May 15, 2006 implementation.

23. At a prehearing conference in N 2006-1 held on March 24, 2006, the Commission rejected the Postal Service's proposed schedule, noting that its advice would be more valuable if it was based on a fully developed evidentiary record.

24. The Commission also asked that all parties submit briefs on the scope of the proceeding as well as the Commission's authority in the case. These briefs were submitted on April 4, 2006.

25. On April 13, 2006, the PRC issued a procedural schedule in N 2006-1. This schedule provides:

   1. Discovery against the Postal Service's direct case ends May 22, 2006.

   2. Hearings on the Postal Service's direct case will be held on June 15 and 16, 2006 beginning at 9:30 a.m. in the Commission's hearing room.

   3. Counsel for the Postal Service shall file a statement confirming the availability of its witnesses for the June 15 and June 16, 2006 hearings no later than June 5, 2006.

   4. Designations of written cross-examination for witness Shah are due June 12, 2006.

      5.      Designations of written cross-examination for witness Williams and the Postal Service as an institution are due on June 13, 2006.

      6.      The deadline for submission of rebuttal testimony is June 23, 2006.

26. Under the schedule set by the PRC in N 2006-1, the Commission most likely will not issue its decision until the fall of 2006.

27. The Postal Service has already begun to consolidate facilities evaluated using the END initiative.

28. At least ten postal facilities were selected for Area Mail Processing (hereinafter "AMP") review in the summer of 2005. These 10 AMP proposals were subjected to END analysis and found to be consistent with the Postal Service's future network design. The 10 facilities to be consolidated include: Pasadena, California Processing and Distribution Center; Olympia, Washington Processing and Distribution Facility; Waterbury, Connecticut Processing and Distribution Facility; Bridgeport, Connecticut Processing and Distribution Facility; Greensburg, Pennsylvania Post Office; Monmouth, New Jersey Processing and Distribution Center; Northwest Boston, Massachusetts Processing and Distribution Facility; Kinston, North Carolina Processing and Distribution Facility; Marysville, California Processing and Distribution Facility; and Mojave, California Post Office.

29. On April 3, 2006, the Postal Service began to move mail normally processed at the Olympia, Washington Processing & Distribution Facility ("P&DF") to the Tacoma, Washington Processing & Distribution Center ("P&DC") (hereinafter "the Olympia/Tacoma consolidation").

30. When the Olympia/Tacoma consolidation is completed, some mail collection box cut-off times will be earlier than they were prior to consolidation; and some mail service for the area will be adversely affected due to the added time taken to transport the mail between Olympia and Tacoma. Postmarks for Olympia originating mail will also be affected.

31. The remaining nine AMP proposals already approved by the Postal Service are currently in various stages of implementation and consolidation for all these facilities is expected to be completed by June of 2006.

32. Forty-one additional facilities have been targeted for review under END and are expected to be consolidated.

33. As part of the consolidation process, Postal Service mail processing equipment and machines will be transferred to different facilities at substantial expense.

34. Section 101(a) of the Postal Reorganization Act provides:

> §101. Postal Policy
>
> (a) ... The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people. It shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities.

35. Section 101(b) of the Postal Reorganization Act provides:

> § 101. Postal Policy
>
> (b) The Postal Service shall provide a maximum degree of effective and regular postal services to rural areas, communities and small towns where post offices are not self-sustaining.

36. Under Section 403, of the Postal Reorganization Act, provides:

    § 403. General Duties

    (b) It shall be the responsibility of the Postal Service—

    ... (3) to establish and maintain postal facilities of such character and in such locations that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services.

37. Despite the policies of the Postal Reorganization Act quoted above, the Postal Service does not provide for the solicitation and consideration of the comments and concerns of the mailing public as part of its END initiative. Public comments are considered, if at all, after a decision to consolidate processing operations or facilities has been made.

38. The END plan does not consider costs or burdens to the mailing public; it only considers Postal Service costs.

39. Under Section 3661 of the Postal Reorganization Act, the Postal Service is required to seek the advice of the Postal Rate Commission and in turn, the Commission may not issue an advisory opinion until an opportunity for public comment has been afforded and these comments considered.

40. If the Postal Service is permitted to continue its implementation of postal mail processing and facility consolidations under END it will do so before receiving the advice of the Commission.

41. The changes made by the Postal Service under the END program will adversely affect mail service to the APWU and its locals in many areas.

42. Changes made pursuant to consolidation, including the relocation of personnel and

equipment, will be impractical to reverse resulting in irreparable harm to APWU, its locals, and other mailers across the United States who will experience a degradation in service.

43. The benefits of requiring the Postal Service to cease implementation of END until it has the opportunity to avail itself of the Postal Rate Commission's advice outweigh any potential harm to the Postal Service caused by the delay.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs APWU prays that this Court issue a decision and order:

44. Declaring that it is unlawful for the Postal Service to proceed with modification to its mail processing operations pursuant to END because the Postal Service has failed to submit END to the Postal Rate Commission a reasonable time prior to the implementation of END; and

45. Granting the APWU a Preliminary Injunction ordering the Postal Service to cease and desist from modifying postal operations and facilities pursuant to END until October 2006, to provide the Postal Rate Commission a reasonable amount of time to conduct hearings and issue an opinion on END under Section 3661 of the Postal Reorganization Act; and

46. Permanently enjoining the Postal Service from implementing any future modifications pursuant to END until the Postal Rate Commission has issued its advisory opinion stating whether the Postal Service's network realignment strategy is consistent with the policies of the Postal Reorganization Act.

Dated: April 21, 2006							Respectfully submitted,


							O'DONNELL, SCHWARTZ & ANDERSON, P.C.


							By: _____
							Darryl J. Anderson
							DC Bar Number 154567
							Jennifer L. Wood
							1300 L Street NW Suite 1200
							Washington, DC 20005-4178
							(202) 898-1707  FAX: (202) 682-9276