UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>    Defendant. | Civil Action No. 06–726 (CKK) |

**MEMORANDUM OPINION**
(July 6, 2007)

Plaintiff, the American Postal Workers Union, AFL-CIO ("Plaintiff" or the "APWU") brought this action for declaratory and injunctive relief against Defendant, the United States Postal Service (the "USPS"). Plaintiff's Complaint alleges that the USPS violated Section 3661 of the Postal Reorganization Act ("Section 3661"), 39 U.S.C. § 3661, by beginning implementation of the USPS' Evolutionary Network Development ("END") program without submitting END to the Postal Rate Commission (the "PRC") for an advisory opinion within a reasonable time prior to the program's effective date and without waiting for an advisory opinion from the PRC. The PRC has now issued its advisory opinion on END, and USPS therefore moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that this Court lacks jurisdiction to review an advisory opinion issued under Section 3661 and that Plaintiff's requests for injunctive relief, and therefore this action, are moot. Plaintiff opposes USPS' Motion to Dismiss, and has also filed a Motion for Leave to File

1

Supplemental and Amended Complaint in response to USPS' Motion to Dismiss.

Upon a searching review of the filings submitted by each party, the attached exhibits, and the relevant statutes and case law, the Court concludes that the instant action is moot. The Court shall therefore grant Defendant's Motion to Dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1), and shall also deny Plaintiff's Motion for Leave to File a Supplemental and Amended Complaint.[1]

## I. BACKGROUND

Section 3661(b) of the Postal Reorganization Act provides:

> When the [USPS] determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis, it shall submit a proposal, within a reasonable time prior to the effective date of such proposal, to the [Postal Rate Commission][2] requesting an advisory opinion on the change.

39 U.S.C. § 3661(b); Compl. ¶¶ 16-17. Furthermore, pursuant to Section 3661(c), the Postal Rate Commission ("PRC") "shall not issue its opinion on any proposal until an opportunity for hearing on the record under sections 556 and 557 of title 5 has been accorded to the [USPS], users of the mail, and an officer of the Commission who shall be required to represent the interests of the general public. . . ." 39 U.S.C. § 3661(c); Compl. ¶ 39.

---

[1] Although USPS has moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant's Motion to Dismiss does not clearly explain USPS' theory for dismissal pursuant to Rule 12(b)(6). In any event, as the Court concludes that this action is moot and must be dismissed pursuant to Rule 12(b)(1), the Court need not consider USPS' argument for dismissal pursuant to Rule 12(b)(6).

[2] The 2006 Amendments to the Postal Reorganization Act, effective December 21, 2006, substituted "Postal Regulatory Commission" for "Postal Rate Commission." Pub.L. 109-435, § 604(f). Nevertheless, to remain consistent with the terminology used by the parties in their filings, the Court shall refer to the Postal Rate Commission.

> A.   *Facts Alleged in Plaintiff's Complaint*

Plaintiff, American Postal Workers Union, AFL-CIO, is a labor organization that represents approximately 300,000 postal employees for purposes of collective bargaining, as well as a large mailer. *Id.* ¶ 8. In its Complaint, Plaintiff alleges that as early as November 2001, USPS began development of a Network Integration and Alignment (NIA) plan to be used to analyze and redesign the existing postal facility network. *Id.* ¶ 10. According to Plaintiff, the NIA plan was sufficiently developed to be used, at least in part, by December 2002. *Id.* ¶ 12. Plaintiff further alleges that, since then, USPS "has used its NIA plan to evaluate proposals to consolidate postal facilities; and proposals selected by NIA have resulted in the closure of approximately 30 [USPS] processing facilities, and in the reallocation of work processed in other facilities." *Id.* ¶ 13. Plaintiff asserts that, although the NIA plan has been renamed the Evolutionary Network Development ("END") process, NIA and END use the same methods, data, models and objectives for designing the USPS mail processing network. *Id.* ¶ 14.

Plaintiff's Complaint states that previous proceedings before the PRC pursuant to Section 3661 of the Postal Reorganization Act have taken approximately 8-12 months to complete, such that "eight months to one year is a reasonable period of time for completion of a Section 3661 proceeding concerning END." *Id.* ¶¶ 18-19. However, according to Plaintiff, USPS submitted a portion of its END plan to the PRC pursuant to Section 3661 on February 14, 2006, stating that USPS intended to implement END on or about May 15, 2006. *Id.* ¶¶ 20-21. Plaintiff asserts that USPS sought expedited consideration of END whereby the PRC would have been required to provide its advice regarding END by May 5, 2006, in time for USPS' May 15, 2006 implementation of END. *Id.* ¶ 22. The PRC, however, rejected USPS' proposed schedule and,

on April 13, 2006, issued a procedural and briefing schedule under which–Plaintiff's Complaint asserts–the Commission would be unlikely to issue its decision on END before the fall of 2006. *Id.* ¶¶ 25-26.

Plaintiff alleges that, notwithstanding the PRC's time frame, by the time that Plaintiff filed its Complaint, USPS had already begun to consolidate postal facilities using the END initiative. *Id.* ¶ 27. Specifically, Plaintiff asserts that "[a]t least ten postal facilities were selected for Area Mail Process ("AMP") review in the summer of 2005,"[3] "subjected to END analysis and found to be consistent with [USPS'] future network design," and scheduled to be consolidated into other facilities. *Id.* ¶ 28. Plaintiff's Complaint further alleges that consolidation of the Olympia, Washington Processing & Distribution Facility into the Tacoma, Washington Processing & Distribution Center began on April 3, 2006, and that consolidation for all ten AMP proposals was expected to be completed by June 2006. *Id.* ¶¶ 29-31. Plaintiff also asserts that forty-one additional postal facilities have been targeted for review under END and are expected to be consolidated. *Id.* ¶ 32.

Plaintiff's Complaint alleges that, despite the policies embodied in the Postal Reorganization Act, USPS "does not provide for solicitation and consideration of comments and concerns of the mailing public as part of its END initiative" before consolidation decisions are made. *Id.* ¶ 37. Plaintiff further states that the END plan does not consider the costs or burdens of END on the mailing public, but rather considers only USPS costs. *Id.* ¶ 38. Finally, Plaintiff

---

[3] Area Mail Processing ("AMP") review is used by USPS as a "reality check" on the consolidation proposals that arise from USPS' END models and USPS uses a combination of the two to identify facilities that are prime candidates for consolidation. *See* Def.'s Mot. to Dismiss, Ex. A (12/19/06 PRC Advisory Op.) at 61-62.

asserts that USPS was required, but nevertheless failed, to seek the advice of the PRC (which in turn must afford an opportunity for public comment) before implementing END. *Id.* ¶¶ 39-40. Plaintiff argues that the changes made by USPS under END "will adversely affect mail service to the APWU and its locals in many areas," and "will be impractical to reverse resulting in irreparable harm to APWU, its locals, and other mailers across the United States who will experience a degradation in service." *Id.* ¶¶ 41-42. Thus, Plaintiffs assert that the "benefits of requiring [USPS] to cease implementation of END until it has the opportunity to avail itself of the [PRC's] advice outweigh any harm to the Postal Service caused by the delay." *Id.* ¶ 43.

As noted above, Plaintiff filed its Complaint on April 21, 2006, seeking a declaration "that it is unlawful for [USPS] to proceed with modification to its mail processing operations pursuant to END because [USPS] has failed to submit END to the [PRC] a reasonable time prior to the implementation of END." *Id.* ¶ 44. In addition, Plaintiff sought two injunctions: (1) a preliminary injunction ordering USPS to cease and desist from modifying postal operations and facilities pursuant to END until October 2006, in order to provide the PRC a reasonable amount of time to conduct hearings and issue an opinion on END;[4] and (2) a permanent injunction that would preclude USPS from implementing any future modifications pursuant to END until the PRC had issued its advisory opinion. *Id.* ¶¶ 45-46.

B. *Events Subsequent to the Filing of Plaintiff's Complaint*

The following events occurred subsequent to the filing of Plaintiff's Complaint and are

---

[4] Although Plaintiff's Complaint purported to seek a preliminary injunction, the Court notes that Plaintiff did not file an application for a preliminary injunction pursuant to Local Civil Rule 65.1(c), which requires that such an application "be made in a document separate from the complaint" and "supported by all affidavits on which the plaintiff intends to rely." LCvR 65.1(c).

described by the parties in their filings with respect to USPS' Motion to Dismiss, as well as by Plaintiff in its Motion for Leave to File a Supplemental and Amended Complaint.

On December 11, 2006 the Association for Postal Commerce ("PostCom") published an internet newsletter in which it reported on a meeting with top postal managers responsible for network realignment. *See* Pl.'s Opp'n at 9; Ex. 10 (12/11/06 PostCom Newsletter); Pl.'s Mem. in Support of Motion to File Suppl. and Am. Compl. (hereinafter "Pl.'s Mot. for Leave to File") at 2. According to PostCom, these managers "quite readily acknowledged that the plans and design for END really are undergoing re-evaluation" and emphasized that USPS' "network plans . . . were far from being set in concrete." Pl.'s Opp'n, Ex. 10 (12/11/06 PostCom Newsletter); Pl.'s Mot. for Leave to File at 2. The PostCom newsletter further asserted that "the whole question as to whether mail processing facilities should be modeled around the regional processing center (RPC) concept needs to be re-looked at." *Id.*[5] In its Opposition and Motion for Leave to File, Plaintiff claims that the PostCom newsletter alerted Plaintiff "to the possibility that [USPS] was in the process of making a significant change in its network realignment program even as it was pending review by the PRC." Pl.'s Opp'n at 9; Pl.'s Mot. for Leave to File at 2.

Eight days later, on December 19, 2006, the PRC issued its advisory opinion regarding END (hereinafter the "Advisory Opinion"). *See* Def.'s Mot. to Dismiss, Ex. A (12/19/06 PRC Advisory Op.). The PRC began its Advisory Opinion by noting that it would "address the dual topics of the goals pursued in the proposed [END] program, and the methods the Service

---

[5] As discussed below, the PostCom newsletter is not published by the United States Postal Service, and the PostCom newsletter does not clearly delineate which statements, if any, are actually attributed to one of the USPS managers, rather than to PostCom. *See* Pl.'s Opp'n Ex. 10 (12/11/06 PostCom Newsletter).

proposes to use in achieving them." *Id.* at 13.  Overall, the PRC found USPS' "goals to be fully consistent with the policies and criteria of the Postal Reorganization Act, and endorse[d] them." *Id.* at 3.  However, the PRC found that the "evidentiary record does not provide assurance that the proposed realignment program, as currently envisaged, will meet its goals." *Id.*  The PRC therefore advised USPS "to obtain and integrate reliable information in [certain] areas before proceeding with full implementation of the contemplated program." *Id.*

The PRC's Advisory Opinion was confined to an assessment of the goals of END and the methods that USPS proposed to use in achieving those goals.  The Advisory Opinion did not address the issue of whether the 10 AMP reviews and planned consolidations constituted implementation of END and, if they did, whether USPS violated Section 3661 by implementing END before the PRC issued its Advisory Opinion.  *See generally id.* at 11-15.[6]

C.  Procedural History

On January 18, 2007, USPS filed a Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and mootness, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  On January 30, 2007, Plaintiff filed a Motion for Leave to File Supplemental and Amended Complaint.  Plaintiff did not, as required by Local Civil Rules 7(i) and 15.1, accompany that Motion with a proposed pleading.  Instead, Plaintiff simply described how it would alter its Complaint if granted leave to do so by the Court.  Plaintiff filed its Opposition to

---

[6] The Advisory Opinion noted that during the proceedings before the PRC, USPS raised a question as to whether Section 3661 requires USPS to seek an advisory opinion regarding END, but that USPS also stated that it had determined in its discretion to do so before proceeding with the END program.  Def.'s Mot. to Dismiss, Ex. A (12/19/06 PRC Advisory Op.) at 9.  The PRC concluded that it was "unnecessary to address the abstract jurisdictional question posed [by USPS] for several reasons," *id.*, and thus specifically did not determine whether USPS was actually required to seek an advisory opinion from the PRC regarding END.

Defendant's Motion to Dismiss on February 2, 2007,[7] and USPS filed its Reply in further support of its Motion to Dismiss on February 28, 2007.

## II. LEGAL STANDARD

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A court may appropriately dispose of a case under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). *See also Jerome Stevens Pharm., Inc.*, 402 F.3d at 1253 ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."); *Hanover v. Hangman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am.*

---

[7] Plaintiff initially filed an opposition to USPS' Motion to Dismiss on January 30, 2007; however, Plaintiff subsequently moved, and was granted leave, to file a corrected opposition. That corrected Opposition was filed on February 2, 2007.

*Farm Bureau v. Environmental Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### III.  DISCUSSION

*A.     Plaintiff's Motion for Leave to File Supplemental and Amended Complaint*

In response to USPS' Motion to Dismiss, on January 30, 2007, Plaintiff filed a Motion for Leave to File Supplemental and Amended Pleading.  At the outset, the Court notes that pursuant to Local Civil Rules 7(i) and 15.1, "[a] motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended."  LCvR 7(i), 15.1. Plaintiff's Motion for Leave to File violates these Rules because it is not accompanied by Plaintiff's proposed amended pleading.  *See* Pl.'s Mot. for Leave to File and Mem. in Support. Moreover, even if Plaintiff's Motion for Leave to File were properly submitted in accordance with the Local Civil Rules, the Court would deny Plaintiff's Motion for Leave to File as futile, because the amended pleading that Plaintiff describes in its Motion for Leave to File would not survive a motion to dismiss.

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served.  *See* Fed. R. Civ. P. 15(a). Once a responsive pleading is served, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party.  *Id.*; *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).  The grant or denial of leave to amend is committed to the sound discretion of the district court, *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996); however Rule 15 specifically provides that leave is to be "freely given when justice so requires," *id.*; *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998).  Nevertheless, the Court may deny as futile a motion to amend a

complaint when the proposed complaint would not survive a motion to dismiss. *James Madison, Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also* 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

Here, because Plaintiff filed its Motion for Leave to File in response to USPS' Motion to Dismiss, Plaintiff may amend its Complaint only by leave of the Court.  While the Court is cognizant that leave to amend is to be "freely given," the Court nevertheless concludes that such leave is inappropriate in this instance.  As noted above, Plaintiff's Motion for Leave to File fails to comply with Local Civil Rules 7(I) and 15.1 because it is not accompanied by Plaintiff's proposed pleading.  Instead, Plaintiff's Motion for Leave to File is accompanied by a description of the PostCom newsletter, discussed above, and a description of how Plaintiff would seek to broaden its request for declaratory relief, if permitted to do so by the Court.  *See* Pl.'s Mot. for Leave to File at 2-3.  The Court surmises that Plaintiff may have opted to vaguely describe its proposed amendments rather than submit a proposed amended complaint because the supplemental allegations that Plaintiff describes lack the credibility required to survive a motion to dismiss.

Specifically, as Plaintiff admits in its Opposition, the PostCom newsletter is unsubstantiated and inadmissible hearsay. *See* Pl.'s Opp'n at 10 n.24.  Furthermore, a review of the PostCom newsletter on which Plaintiff bases its proposed amendments reveals that the newsletter is in no way connected to the USPS, but rather is an internet publication written by "a national association of businesses and organizations that use or support the use of mail as a

medium for business communication and commerce." *See* "What is PostCom?", http://postcom.org/public/on_postcom/on_membership/info.htm. Moreover, although the PostCom newsletter purports to describe a conversation with Deputy Postmaster General Pat Donahoe and USPS Senior Operations Vice President Bill Galligan, the newsletter does not attribute specific quotations to those USPS managers. Def.'s Mot. to Dismiss, Ex. 10 (12/11/06 PostCom Newsletter). It is therefore unclear the extent to which the newsletter actually reports comments made by USPS managers rather than opinions of PostCom. *Id.*

As a result, the Court concludes that Plaintiff's proposed amendments would be futile because, as Plaintiff describes them, they would not survive a motion to dismiss. The Court shall therefore deny Plaintiff's Motion for Leave to File Supplemental and Amended Complaint.

      B.     *USPS' Motion to Dismiss*

As an initial matter, although USPS purports to bring its Motion to Dismiss pursuant to Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6), USPS only argues that this matter should be dismissed under Rule 12(b)(1). Since USPS fails to actually argue that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6), the Court shall confine its analysis to USPS' arguments for dismissal pursuant to Rule 12(b)(1).[8] USPS' Motion to Dismiss sets forth

---

[8] USPS' Motion to Dismiss contains one section entitled "Plaintiff cannot pursue judicial review of the Commission's advisory opinion." Def.'s Mot. to Dismiss at 5-6. To the extent that USPS intends this section to argue that Plaintiff fails to state a claim upon which relief can be granted because there is no avenue for judicial review of the PRC's advisory opinion, this argument fails because, as discussed in greater detail below, Plaintiff's Complaint does not actually ask this Court to review the PRC's Advisory Opinion. In any event, it is clear that a significant factual dispute exists as to whether the 10 AMP reviews and planned consolidations that USPS allegedly undertook prior to the issuance of the PRC's Advisory Opinion actually constituted implementation of END. *Compare* Pl.'s Opp'n at 8 ("by at least the fall of 2005 the END program was being used to direct network realignment"), *with* Def.'s Reply at 3 ("The

two arguments for dismissal under Rule 12(b)(1).  USPS devotes the bulk of its Motion to arguing that this Court lacks jurisdiction to review an advisory opinion issued under 39 U.S.C. § 3661.  In far less detail, USPS asserts that Plaintiff's requests for injunctions, and thus this action, are moot because the PRC has issued its Advisory Opinion.  The Court shall address each of USPS' arguments in turn.

        1.     *Plaintiff Does Not Seek Judicial Review of the PRC's Advisory Opinion*

USPS' Motion to Dismiss primarily argues that this Court lacks jurisdiction to review the PRC's Advisory Opinion.  Specifically, USPS argues that Section 3661 does not provide for judicial review and that the Fifth Circuit has found that the legislative history of the Postal Reorganization Act indicates that Congress did not intend judicial review to extend to proceedings initiated under § 3661.  *See* Def.'s Mot. to Dismiss at 4-5 (citing 39 U.S.C. § 3661 and *Buchanan v. United States Postal Service*, 508 F.2d 259, 263 (5th Cir. 1975)).  USPS further notes that Sections 3663 and 3664 of the recently enacted Postal Accountability and Enhancement Act of 2006 provide that parties adversely affected or aggrieved by a "final order or decision" of the PRC may seek review by the United States Court of Appeals for the District of Columbia, 39 U.S.C. § 3663, while the district courts have jurisdiction "to enforce, and to enjoin and restrain [USPS] from violating, any order issued by the [PRC]," 39 U.S.C. § 3664.

---

[record of the PRC proceeding] shows that the 10 local operational consolidations were not generated by the END optimization model; they had been proposed locally and . . . were merely checked against the END simulation model in October 2005 . . . .").  As such, it would be inappropriate for the Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) because, in addressing a motion to dismiss under that Rule, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)

*See* Def.'s Mot. to Dismiss at 4-5. However, USPS argues that, because advisory opinions issued by the PRC are non-binding, *see Buchanan*, 508 F.2d at 262, the Advisory Opinion at issue in this action does not constitute either a "final order or decision" or an "order issued by the [PRC]." Def.'s Mot. to Dismiss at 5. Moreover, USPS notes, Sections 3663 and 3664 do not apply to any PRC action taken before December 21, 2006, the effective date of the Postal Accountability and Enhancement Act. *Id.*

Defendant thus appears correct in arguing that this Court lacks jurisdiction to review the PRC's Advisory Opinion.[9] This argument is inapposite, however, because Plaintiff does not, in fact, seek review of the Advisory Opinion. In its Motion to Dismiss, USPS asserts that Plaintiff "intervened in the [proceeding before the PRC] and was afforded an opportunity to fully litigate in front of the [PRC]," but "failed to persuade the [PRC] that the Postal Service violated § 3661(b)," and now "seeks to relitigate this issue in the District Court." Def.'s Mot. to Dismiss at 5. Even if Plaintiff, in fact, raised the possibility that USPS violated Section 3661 before the PRC, the PRC's Advisory Opinion does not address the allegations contained in Plaintiff's Complaint, *i.e.*, that the 10 AMP reviews and planned consolidations constituted implementation of END and that USPS violated Section 3661 by implementing END before the PRC issued its Advisory Opinion. *See generally* Def.'s Mot. to Dismiss, Ex. A (12/19/06 PRC Advisory Op.).

---

[9] Significantly, even prior to the adoption of Sections 3663 and 3664, it appears that this Court would have lacked jurisdiction to review the PRC's Advisory Opinion pursuant to 39 U.S.C. § 3628, which provided that "A decision of the Governors [of the USPS] to approve, allow under protest, or modify the recommended decision of the [PRC] may be appealed to any court of appeals of the United States. . . . No court shall have jurisdiction to review a decision made by the [PRC] or Governors under this chapter except as provided in this section." 39 U.S.C. § 3628, *repealed by* Postal Accountability and Enhancement Act, Pub.L. 109-435, Title II, § 201(b), 120 Stat. 3205.

USPS is therefore technically correct that the PRC Advisory Opinion did not find that USPS violated Section 3661(b), Def.'s Mot. to Dismiss at 5, but a more accurate description is that the Advisory Opinion contained no conclusion whatsoever on this question.  *See generally* Def.'s Mot. to Dismiss, Ex. A (12/19/06 PRC Advisory Op.).

      Plaintiff's Complaint seeks a declaration that it is unlawful for USPS to proceed with modification to its mail processing operations pursuant to END because USPS failed to submit END to the PRC for an advisory opinion within a reasonable time prior to the implementation of END.  *See* Compl. ¶ 44.  Because the PRC reached no conclusion on this question, issuing the relief that Plaintiff seeks does not require the Court to review the PRC's Advisory Opinion. Instead, Plaintiff's Complaint appears to be properly brought before this Court pursuant to 39 U.S.C. § 409, which provides that "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against [USPS]." 39 U.S.C. § 409(a).

      2.    *Plaintiff's Complaint Is Moot Because The PRC Has Issued Its Advisory Opinion*

      Federal courts are limited by Article III of the Constitution to adjudicating "actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 318, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988).  Even if litigation poses a live controversy when filed, "[a] case is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627, 631 (D.C. Cir. 2002) (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)); *see also Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990).  Accordingly, "Article III denies federal courts the power to decide questions that cannot

affect the rights of litigants in the case before them, and confines them to resolving real and substantive controversies admitting of specific relief through a decree of a conclusive character. . . ." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990). This limitation on federal courts' jurisdiction "subsists through all stages of federal judicial proceedings." *Clarke*, 915 F.2d at 701 (citing *Lewis*, 494 U.S. 472, 110 S. Ct. at 1253).

As noted above, Plaintiff's Complaint requested that the Court issue two injunctions: (1) a preliminary injunction ordering USPS to cease and desist from modifying postal operations and facilities pursuant to END until October 2006, in order to provide the PRC a reasonable amount of time to conduct hearings and issue an opinion on END; and (2) a permanent injunction that would preclude USPS from implementing any future modifications pursuant to END until the PRC had issued its advisory opinion. Compl. ¶¶ 45-46. USPS' Motion to Dismiss correctly argues that these two requests for injunction are moot as a result of the PRC's December 21, 2006 Advisory Opinion. *See* Def.'s Mot. to Dismiss at 9.

In response, Plaintiff asserts in its pleadings that this action is nevertheless not moot because an actual case or controversy remains between the parties as to the implementation and application of Section 3661(b) and because the APWU seeks "a declaratory judgment that the [USPS] violated Section 3661(b) by implementing its program without submitting it to the PRC a reasonable time in advance as required by that statute." Pl.'s Opp'n at 2. However, Plaintiff's Complaint, in fact, sought a declaration "that it is unlawful for [USPS] to proceed with modification to its mail processing operations pursuant to END because [USPS] has failed to submit END to the [PRC] a reasonable time prior to the implementation of END." *Id.* ¶ 44. Plaintiff's Complaint, therefore, focused very specifically on USPS' alleged implementation of

15

END by subjecting 10 facilities to AMP reviews and beginning efforts towards consolidation. Plaintiff's Complaint did not seek a broad declaration regarding USPS policy and timing with respect to Section 3661.

>As the D.C. Circuit has explained:
>
>When a plaintiff's specific claim is moot or otherwise fully resolved . . . [and] a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for declaratory judgment that the specific action was unlawful, unless the specific claim fits the exception for cases that are "capable of repetition, yet evading review."

*City of Houston, Texas v. Dep't of Housing and Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994); *see also Flynt v. Weinberger*, 762 F.2d 134 (D.C. Cir. 1985); *Fraternal Order of Police, D.C. v. Rubin*, 134 F. Supp. 2d 39, 41-42 (D.D.C. 2001). Accordingly, because the PRC has now issued its Advisory Opinion, Plaintiff's claim for a declaratory judgment–at least as that claim is framed in Plaintiff's Complaint[10]–is clearly moot unless USPS' alleged violation of Section 3661 is capable of repetition, yet evading review.

The capable of repetition, yet evading review exception to the mootness doctrine applies where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975). To satisfy the second element, Plaintiff must show more than "a mere physical or theoretical possibility . . . . [Rather, there must be] a '*demonstrated*

---

[10] Having denied Plaintiff's Motion for Leave to File a Supplemental or Amended Complaint, *see supra* at 9-11, the Court considers only the allegations and claims contained in Plaintiff's operative April 21, 2006 Complaint.

*probability*' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982) (emphasis added) (quoting *Weinstein*, 423 U.S. at 149, 96 S. Ct. 347).

In attempting to demonstrate these elements, Plaintiff purports to broaden the scope of its original Complaint by asserting that USPS "has been cavalier about its obligation to submit its plans to the PRC," and arguing that "[i]f the issuance of a PRC Advisory Opinion on the merits of a plan can moot any pending dispute about the timing of the submission of the plan to the PRC, then this issue will never be adjudicated." Pl.'s Opp'n at 10. However, as noted above, Plaintiff's Complaint did not present a general challenge to the timing of USPS' submissions of issues to the PRC for advisory opinions pursuant to Section 3661. Instead, Plaintiff's Complaint focused very narrowly on whether USPS could lawfully continue what Plaintiff viewed as the implementation of END prior to the PRC issuing its advisory opinion on the plan. As the D.C. Circuit has noted, "[t]he more broadly we define the wrongful conduct . . . the greater the likelihood of repetition;" nevertheless, "where plaintiffs are resisting a mootness claim . . . they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief." *Clarke*, 915 F.2d at 703; *see also Fraternal Order of Police*, 134 F. Supp. 2d at 42-43. Plaintiff therefore cannot demonstrate that USPS' alleged wrong is capable of repetition, yet evading review simply by broadening the nature of the wrong challenged.

In addition, even if the Court accepted Plaintiff's newly broadened construction of USPS' alleged wrong as well as the allegations with which Plaintiff sought to amend its Complaint, Plaintiff would still be unable to show that there is more than "a mere physical or theoretical possibility," that USPS' will violate Section 3661 in the future by failing to timely seek an

17

advisory opinion from the PRC . *Murphy*, 455 U.S. at 482, 102 S. Ct. 1181.  Plaintiff's proposed amendments merely allege that the December 11, 2006 PostCom newsletter "alerted the APWU to the possibility" that USPS might modify the END plan after submitting it to the PRC for an advisory opinion.  Pl.'s Opp'n at 9; Pl.'s Mot. for Leave to File at 2.  Plaintiff does not even allege that USPS *actually* altered or planned to alter the END plan after submitting it to the PRC or that, if USPS did so, USPS would be required by Section 3661 to re-submit the plan to the PRC for a new advisory opinion.  Instead, Plaintiff acknowledges that the PostCom newsletter is mere hearsay, and asserts that "[i]f Postcom was correct, it may well be that the PRC was deliberating about a plan that had already been materially changed.  It may well be that the [USPS] is obligated to submit its changed plans to the PRC forthwith in order to permit a reasonable time for review before their implementation."  Pl.'s Opp'n at 10 n.24.  This assertion simply fails to establish a "'*demonstrated probability*' that the same controversy will recur." *Murphy*, 455 U.S. at 482, 102 S. Ct. 1181.  As this action is therefore moot, the Court shall dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## IV.  CONCLUSION

For the foregoing reasons, the Court shall deny Plaintiff's Motion for Leave to File Supplemental and Amended Complaint.  Furthermore, the Court concludes that this action is moot as a result of the PRC's December 19, 2006 Advisory Opinion, and shall therefore grant USPS' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  An appropriate Order accompanies this Memorandum Opinion.

Date:  July 6, 2007

*/s/*
COLLEEN KOLLAR-KOTELLY
United States District Judge